MICHELE M. BETTI, ESQ. (SBN 204939)
LAW OFFICES OF BETTI & ASSOCIATES
1732 Knoll Field Way
Encinitas, CA 92024
Telephone:  (760) 500-5451
Facsimile:  (760) 454-2204
Email:  mbettilaw@gmail.com

Attorneys for Plaintiff
ERIC NORWOOD

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

Western Division 312 N. Spring St., Rm.G-8, Los Angeles, CA 90012

| | |
|---|---|
| Eric Norwood,<br><br>        Plaintiff,<br><br>v.<br><br>Children And Youth Services Inc., West Ridge Academy and DOES 1 through 100, inclusive,<br>        Defendants. | Case No.:  CV10 7944 GAF (MANx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a); MEMORANDUM OF POINTS AND AUTHORITIES; IN SUPPORT THEREOF; AND DECLARATIONS IN SUPPORT THEREOF.**<br><br>Judge:  Hon. Judge Gary A. Feess<br>Discovery Magistrate Judge:  Hon. Margaret A. Nagle<br><br>Hearing Date: April 25, 2011<br>Time: 9:30 a.m.<br>Place: Dept. 740 |

**PLAINTIFF, ERIC NORWOOD'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a).**

# TABLE OF CONTENTS

ISSUE PRESENTED………………………………………………………………...2

STATEMENT OF THE CASE…………………………………………………………2

LEGAL ARGUMENT………………………………………………………………3

I.      TRANSFER OF VENUE IS DISCRETIONARY…..…………………………..3

II.     CALIFORNIA'S VENUE IS THE MOST CONVENIENT FOR PARTIES AND
        WITNESSES…………………………………………………………………4

        A.      CONVENIENCE OF PARTIES…………………………………….....4

        B.      CONVENIENCE OF WITNESSES………………………………5

        C.      INTEREST OF JUSTICE……………………………………………6

                1.      BASED UPON UTAH'S STATUTE OF LIMITATIONS IT  IS NOT A
                        SUITABLE FORUM ………………………………………..7

III.    VENUE IS PROPER IN CALIFORNIA BECAUSE A SUBSTANTIAL PART OF THE
        EVENTS OCCURRED IN CALIFORNIA……………………………….......7

IV.     DEFENDANT REASONABLY SHOULD HAVE ANTICIPATED BEING SUED IN
        CALIFORNIA BASED UPON IT DOING BUSINESS IN THIS STATE……………9

        A.      WHAT CONSTIUTES DOING BUSINESS……………………...………...11

        B.      DEFENDANT HAS ENOUGH MINIMUM CONTACTS WITH CALIFORNIA
                THAT IT SHOULD HAVE REASONABLY ANTICIPATED BEING HAILED
                INTO COURT HERE…………………………………………………12

V.      THIS COURT MUST APPLY THE SUBSTANTIVE LAW OF CALIFORNIA………13

CONCLUSION……………………………………………………………………15

TABLE OF AUTHORITIES

**FEDERAL CASES**

Ferens v. John Deere Co., 494 U.S. 516, 519 (1990). ……………………………………3, 4

Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979)...…………3

Los Angeles Memorial Coliseum Comm'n v. NFL, 89 F.R.D. 497, 499 (C.D. Cal. 1981), aff'd
726 F.2d 1381 (9th Cir. 1984) ……………………………………………………………3

Gregg Comm. Systems, Inc. v. AT & T Co., 575 F. Supp. 1269, 1270 (N.D. Ill. 1984)..…………3

In re Volkswagen of America, Inc., 506 F.3d 376, 385 (5th Cir. 2007) …………………3, 7, 8

Heller Fin'l, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir. 1989)…..………3

Lopez Perez v. Hufstedler, 505 F. Supp. 39 (D.D.C. 1980) …………………………………..…4

E. & J. Gallo Winery v. F. & P. S.p.A., 899 F. Supp. 465, 466 (E.D. Cal. 1994) ………………4

Lewis v. ACB Business Services, Inc., 135 F.3d 389, 413 (6th Cir. 1998). ……………....…4, 7

Reed Elsevier, Inc. v. Innovator Corp., 105 F. Supp. 2d 816, 821 (S.D. Ohio 2000) ……………4

Miracle v. NYP Holdings, Inc., 87 F. Supp. 2d 1060, 1073 (D. Haw. 2000). ……………………4

Filmline (Cross–Country) Productions, Inc. v. United Artists Corp., 865 F.2d 513, 520 (2nd Cir.
1989) …………………………………………………………………………………....…5

Palace Exploration Co. v. Petroleum Develop. Co., 316 F.3d 1110, 1121–1122
(10th Cir. 2003)…………………………………………………………………………....…5

Los Angeles Memorial Coliseum Comm'n v. National Football League, 89 F.R.D 497, 501
(C.D. Cal. 1981)…………………………………………………………………………… 5

Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc. 42 F. Supp. 2d 821, 834
(N.D. Ill. 1999)…………………………………………………………………………………5

Reed v. Fine Oil & Chem. Co., 995 F. Supp. 705, 714 (E.D. Tex. 1998) …………………….…5

Van Dusen v. Barrack, 376 U.S. 612, 637–639 (1964) …………………………………………..5

Ashmore v. Northeast Petroleum Div. of Cargill, Inc. 925 F. Supp. 36, 38 (D. Me. 1996)……....5

Dwyer v. General Motors Corp., 853 F. Supp. 690, 693 (S.D.N.Y. 1994). ……………………...5

Froelich v. Petrelli, 472 F. Supp. 756, 761 (D. Haw. 1979)……………………………………...6

Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985)…………7

International Shoe Co. v. Washington, Office of Unemp. Compensation & Placement, 326 U.S. 310, 316 (1945).… ……………………………………………………………8, 9, 12

Jenkins Brick Co. v. Bremer, 321 F.2d 1366, 1371 (11th Cir. 2003)……………………8, 9

Gulf. Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir.2005) ………………………..…….8

Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir. 2003) …………………..8

First of Mich. Corp. v. Bramlet, 141 F.3d 260, 263 (6th Cir. 1998)…………………………..8

Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2nd Cir. 1992) ………………………..9

Myers v. Bennett Law Offices, 238 F.3d 1068, 1076 (9th Cir.2001). ………………………9

Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995). ……………………………………9

Carekeeper Software Develop. Co., Inc., 46 F. Supp. 2d 1366, 1371–1372 (N.D. Ga. 1999)……9

Travelers Health Assn. v. Virginia, 339 U.S. 643 (1950)…………………………………..9

Hanson v. Denckla, 357 U.S. 235 (1958). ……………………………………………11

Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). ……………………………….13

Van Dusen v. Barrack, 376 U.S. 612, 637–639 (1964)……………………………………14

Muldoon v. Tropitone Furn. Co., 1 F.3d 964, 965 (9th Cir. 1993)…………………………14

Strassberg v. New England Mut. Life Ins. Co., 575 F.2d 1262, 1264 (9th Cir. 1978) …………..14


**CALIFORNIA CASES**

A.I.U. Ins. Co. v. Superior Court, 177 Cal. App. 3d 281, 291 (Cal. Ct. App. 1986)……...3, 12, 13

Stangvik v. Shiley, Inc., 54 Cal.3d 744, 752 (1991) ……………………………………...……6

Guimei v. General Elec. Co., 172 Cal. App. 4th 689, 696 (2009)………………………….....6

Chong v. Sup.Ct. (HBZ Fin. Ltd.), 58 Cal. App. 4th 1032, 1036–1037 (1997)………………….6

Delfosse v. C.A.C.I., Inc.-Federal, 218 Cal. App. 3d 683, 691 (1990)…………………………..7

Jeter v. Austin Trailer Equipment Co., 122 Cal. App. 2d 376, 381 (1953)………………….…...11

Buckeye Boiler Co. v. Superior Court, 71 Cal.2d 893 (1969)…………………………………10, 11

West Publishing Co. v. Superior Court, 20 Cal.2d 720, 728 (1942) ………………………11, 12

Proctor & Schwartz v. Superior Court, 99 Cal. App. 2d 376, 383 (1950) …………………..…11

Jeter v. Austin Trailer Equipment Co., 122 Cal. App. 2d 376, 386 (1953) …………….......…10, 11

Empire Steel Corp. of Texas v. Superior Court, 56 Cal.2d 823 (1961) …………………..……….11

Kneeland v. Ethicon Suture Laboratories, 118 Cal. App. 2d 211, 257 (1953) ……………….11

Rowe v. Dorrough, 150 Cal. App. 3d 901, 907, 908 (1984) ………………………………….11

Carl F. W. Borgward, G.M.B.H. v. Superior Court, 51 Cal.2d 72, 76 (1958) …………………12

Koninklijke Luchtvaart Maatschappij v. Superior Court, 107 Cal. App. 2d 495, 500 (1951……12

Long v. Mischicot Modern Dairy, 252 Cal. App. 2d 425 (1967).. ……………………………12

Hill v. Hill, 193 Cal. App. 3d 1118, 1121 (1987). ………………………………………14

Travelers Ins. Co. v. Workmen's Comp.App. Bd., 68 Cal. App. 2d 7 (1967) ………………16

Kearney v. Salomon Smith Barney, Inc., 39 Cal. App. 4th 95, 107-108 (2006). ………………16

**FEDERAL STATUTES**

28 U.S.C.A. § 1404(a) West……………………………………………………………………1

28 U.S.C.A. § 1391(a) (West)………………………………………………………………8

28 U.S.C.A. § 1391(a)(2) (West). …………………………………………………........8

28 U.S.C.A. § 1391(b)(2) (West). …………………………………………………........8

15 U.S.C.A. § 1692 (West). ……………………………………………………………9

**CALIFORNIA STATUTES**

Cal. Civ. Proc. Code § 340.1 (West)…………………………………………………….7, 15

Cal. Penal Code § 236 (West)…………………………………………………………..13

**OTHER STATE STATUTES**

Utah Code Ann. § 78B-2-308 (West). ……………………………………………………7

**OTHER AUTHORITIES**

Rest. 2d, Conflict of Laws § 47……………………………………………………….9, 10

21 Hastings L. J. 1127………………………………………………………………10

28 U.C. Davis L. Rev. 513……………………………………………………………10

McDougal, American Conflicts Law 5th, § 27……………………………………...…10

Scoles & Hay 3d, § 5.11; 27 A.L.R. 3d 397…………………………………………...…10

27 A.L.R. 3d 397……………………………………………………………………………10

36 Am. Jur. 2d (2001 ed.), Foreign Corporations § 442. ………………………………10

Rest. 2d, Conflict of Laws § 47, Comment a. ……………………………………………...11

Rest. 2d, Conflict of Laws § 47, Comment h………………………………………………12

36 Am.Jur.2d (2001 ed.), Foreign Corporations § 334. …………………………………12

2 Witkin, Cal. Proc. 5th (2008) Jurisd, § 167, p. 770. …………………………………...…12

2 Witkin, Cal. Proc. 5th (2008) Jurisd, § 168, p. 771. ……………………………………12

**Issue Presented**

In deciding this motion, the court need address only the following three issues:

1.  Transferring venue pursuant to 28 U.S.C.A. § 1404(a) is discretionary, and done only for convenience of parties and witnesses.

2.  Venue is proper in California because a substantial part of the events giving rise to the causes of action occurred in California.

3.  Defendant has substantial minimum contacts with California.

The Defendant kidnapped a California resident, beat, sexually abused, and held him against his will while in the state of California and continually subjected him to daily sadistic beatings and sexual abuse. Defendant conducted business with California, advertised in California, engaged in economic activity with California, and committed criminal acts in California. Defendant's conduct and connection with California are such that it should have reasonably anticipated being sued in this State. For this reason, venue is proper in California.

**Statement of the Case**

Plaintiff, Eric Norwood ("Eric"), was sexually abused and beaten at Defendant Children And Youth Services Inc., West Ridge Academy/Utah Boys Ranch (the "Ranch") as a young boy from 2000 to 2002. He was kidnapped from his Grandmother's home in California by the Ranch, held against his will for over two years, and subjected to daily sadistic beatings and sexual abuse by guards and staff members of the Ranch. Eric was emotionally terrorized by employees of the Ranch and lived for over two years with the helplessness of never leaving the Ranch alive. Complaint ¶¶ 8-10.

In return for its sadistic and criminal beatings and sexual assaults of Eric, the Ranch received over $3,600 per year. The Ranch would like this Court to believe that it has no ties to California and should not be hailed into this Court. But, the Ranch has purposefully availed itself from this Court's jurisdiction. The Ranch committed egregious acts of violence in this State and upon a resident of this State. The Ranch kidnapped Eric from his Grandma's house in California, handcuffed him and transported him across state lines violating State law. When Eric refused to go with employees of the Ranch, they beat him into submission, and threatened his life if he fought back or attempted to tell anyone. Complaint ¶¶ 8-10.

The Ranch transacted business and continues to transact business in this State for the purpose of realizing a pecuniary profit. It does this by engaging in economic activity with California through advertising and taking money for its facility from California residents. In addition to doing business with residents in the private sector a private, the Ranch also conducts business with the State of California by taking wards of the State (children) to its facility and in return receives a hefty sum of over $6,300 per month, per child. Because Defendant is "doing business" in the State of California, this creates a relationship that makes it reasonable for this State to require that Defendant defend actions brought against it here. The question is not whether the Ranch anticipated being sued in California, "but what it reasonably should have anticipated."

**Legal Argument**

## I.       Transfer of Venue Is Discretionary.

Any party – plaintiff or defendant – may seek a discretionary transfer under 28 U.S.C.A. § 1404(a) for "convenience" and "in the interest of justice." <u>Ferens v. John Deere Co.</u>, 494 U.S. 516, 519 (1990). The decision to grant a § 1404(a) transfer is always *discretionary* with the trial court. 28 U.S.C.A. § 1404 (West). Because plaintiff's choice of forum is entitled to deference, the moving party (defendant) has the burden of showing that "the convenience of parties and witnesses" and "interest of justice" require transfer to another district. <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 279 (9th Cir. 1979); <u>Los Angeles Memorial Coliseum Comm'n v. NFL</u>, 89 F.R.D. 497, 499  (C.D. Cal. 1981), aff'd 726 F.2d 1381 (9th Cir. 1984); <u>Gregg Comm. Systems, Inc. v. AT & T Co.</u>, 575 F. Supp. 1269, 1270 (N.D. Ill. 1984). A transfer will not be ordered if the result is merely to shift the inconvenience from one party (defendant) to another (plaintiff). <u>In re Volkswagen of America, Inc.</u>, 506 F.3d 376, 385 (5th Cir. 2007) (emphasis added); <u>Heller Fin'l, Inc. v. Midwhey Powder Co., Inc.</u>, 883 F.2d 1286, 1293 (7th Cir. 1989). A party seeking a transfer cannot rely on vague generalizations as to convenience factors. The party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include. <u>Heller Fin'l, Inc.</u>, 883 F.2d at 1293.

## II.    California's Venue Is The Most Convenient For These Parties And Witnesses.

Transfers under § 1404(a) are based on considerations of convenience and the interests of justice, rather than choice of law. The convenience of third-party witnesses and the interests of justice must also be considered. Ferens, 494 U.S. 516 at 527–528. In determining Convenience and Interest of Justice there are three general factors that are identified:

1. *Convenience of parties;*

2. *Convenience of witnesses; and*

3. *Interest of justice.*

These factors are addressed to the inherent discretion of the court. They are interpreted broadly to allow the court to consider the particular facts of each case. 28 U.S.C.A. § 1404(a). Lopez Perez v. Hufstedler, 505 F. Supp. 39  (D.D.C. 1980); E. & J. Gallo Winery v. F. & P. S.p.A., 899 F. Supp. 465, 466 (E.D. Cal. 1994) (citing text).

### A.    *Convenience of parties.*

Plaintiff's choice of forum, while not dispositive, "should be given weight when deciding whether to grant a motion to change venue." Lewis v. ACB Business Services, Inc., 135 F.3d 389, 413 (6th Cir. 1998). A transfer will not be ordered simply to make it more convenient for defendant: "The venue transfer provisions of Section 1404(a) are not meant to merely shift the inconvenience to the plaintiff." Reed Elsevier, Inc. v. Innovator Corp., 105 F. Supp. 2d 816, 821 (S.D. Ohio 2000) (internal quotes omitted). Where plaintiff is a private individual and defendant is a large corporation, defendant's assertions regarding monetary expense and difficulty in litigating in a distant forum are likely to be disregarded. Miracle v. NYP Holdings, Inc., 87 F. Supp. 2d 1060, 1073 (D. Haw. 2000).

Here, Plaintiff is an individual. Defendant is a Corporation. Defendant's assertions that it will be burdened attending hearings, depositions, and court appearances, are not persuasive. As the Court indicates in Miracle, Defendant's assertions regarding monetary expenses and difficulty in litigating against an individual Plaintiff are likely to be disregarded. Transferring venue would be much more inconvenient for Plaintiff (an individual) then this Corporate Defendant.

**B.** *Convenience of witnesses.*

The court will want to know who the witnesses are, where they are located, what their testimony will be and why such testimony is relevant or necessary. Filmline (Cross–Country) Productions, Inc. v. United Artists Corp., 865 F.2d 513, 520 (2nd Cir. 1989); *see* Palace Exploration Co. v. Petroleum Develop. Co., 316 F.3d 1110, 1121–1122 (10th Cir. 2003); Los Angeles Memorial Coliseum Comm'n v. National Football League, 89 F.R.D 497, 501 (C.D. Cal. 1981). The court will consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relation to the issues in the case. Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc. 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999). The reach of subpoena power to secure witness attendance is a factor. But, this is not controlling if witnesses are employees of defendant whose attendance can be compelled. Reed v. Fine Oil & Chem. Co., 995 F. Supp. 705, 714 (E.D. Tex. 1998); Van Dusen v. Barrack, 376 U.S. 612, 637–645 (1964); Ashmore v. Northeast Petroleum Div. of Cargill, Inc. 925 F. Supp. 36, 38 (D. Me. 1996). Familiarity with governing state law (in diversity cases) is also a factor. And, relative means of the parties is important. Dwyer v. General Motors Corp., 853 F. Supp. 690, 693 (S.D.N.Y. 1994).

In the present case, to date, there are more percipient witnesses that exist in California than in Utah:

Percipient Witnesses #1.
Dr. Leighton J. Reynolds - Plaintiff's treating physician – resides in Valencia, California. Will testify about Plaintiff's injuries relating to the physical and sexual abuse by Defendant in California and at Defendant's facility in Utah, including, but not limited to an imprint of trauma, and resulting depression and anxiety that come with Post Traumatic Stress Disorder (PTSD).

Percipient Witnesses #2, #3.
Dr. and Mr. Kathleen McVey – Percipient witnesses testifying as to Defendant's contact with California and doing business in California – the McVeys reside in Quartz Hill, California. Will also testify as to Plaintiff's damages.

Percipient Witnesses #4, #5.
Melissa Ann Norwood and Lewis Ara Jerome Norwood – Plaintiff's parents – reside in Castaic, California. Will testify to the abduction and kidnapping of Plaintiff from his grandmother's house in Agoura, California, being taken against his will, beaten into submission, physically and

sexually abused, and held against his will for over two years by Defendant, and the continuing effects the abuse has on Plaintiff.

Percipient Witnesses #6.
Plaintiff's Grandmother, who is over 80 years old, resides in Agoura, California. Will testify as to the abduction and kidnapping of Plaintiff from her home in Agoura, California, how Plaintiff was taken against his will, beaten into submission, physically and sexually abused, and held against his will for over two years by Defendant, and the effects the abuse continues to have on Plaintiff.

Percipient Witnesses #7, #8, #9.
Adam Tunick, MSW;
Monica Biernat, SCSW; and
Bill Thomas, Assistant Division Chief

All three percipient witnesses work for the County of Los Angeles Department of Children and Family Services – all reside in California and work in Santa Clarita, California. Will testify that Defendant transacted business and continues to transact business in California for the purpose of realizing a pecuniary profit. Defendant advertises in California through the internet, brochures, pamphlets and other printed materials about its facility. Defendant engages in economic activity with California. The Defendant transacts business with the State of California – specifically the Los Angeles County's Department of Children and Family Services, who pay $6,371 per month for each child that is a ward of the State of California, and attends Defendant's facility. All are expected to also testify as to Defendant's physical and sexual abuse of Dr. Kathleen McVey and Mr. McVey's daughter while at Defendant's facility.

Documentary Evidence – Books and Records.
All records relating to the Defendant's contacts with California and doing business in California are located in California, not the district to which transfer is sought.

### C.   *Interest of justice.*

*Statute of limitations.* It would not be "in the interest of justice" to transfer a case under § 1404(a) that would be barred in the transferee court by the applicable statute of limitations. Froelich v. Petrelli, 472 F. Supp. 756, 761 (D. Haw. 1979). There must be a "suitable" alternative forum available, meaning one in which a *valid judgment may be obtained* against defendant. *See* Stangvik v. Shiley, Inc., 54 Cal.3d 744, 752 (1991); An alternative forum is "suitable" if it has *jurisdiction* and an action in that forum will not be barred by the *statute of limitations*. Guimei v. General Elec. Co., 172 Cal. App. 4th 689, 696 (2009); Chong v. Sup.Ct. (HBZ Fin. Ltd.), 58 Cal. App. 4th 1032, 1036–1037 (1997). The statute of limitations in the other forum must <u>not</u> have run on plaintiff's claim; or, alternatively, defendant must be willing to *waive* the statute as a

condition of the court's granting his or her motion. Stangvik, 54 Cal.3d at 752; Delfosse v. C.A.C.I., Inc.-Federal, 218 Cal. App. 3d 683, 691 (1990).

### 1.   Based Upon Utah's Statute Of Limitations, It Is Not A Suitable Forum.

Utah law differs from California law in that under Utah law a plaintiff only has four years from the age of majority (i.e., age 22) to bring a cause of action resulting from childhood sexual abuse. Utah Code Ann. § 78B-2-308 (West). Plaintiff would not even be able to bring an action in Utah for child sexual abuse because Utah law does not allow for victims to bring causes of action after their 22nd birthday.

In contrast, under California law, a plaintiff has eight years from the age of majority (i.e., age 26) to bring a cause of action based on injuries resulting from childhood sexual abuse. Cal. Civ. Proc. Code § 340.1 (West). California courts and the Legislature have made it very clear that California has a strong interest in protecting its residents from child sexual abuse, and affords them an opportunity to file claims resulting from such abuse against perpetrators and entities that further this abuse under an extended statute of limitations.

*Deference to Plaintiff's Choice of Forum.* A plaintiff's choice of forum is accorded substantial weight in proceedings under § 1404(a) (so-called "home turf" rule). Courts generally will not order a transfer unless the "convenience" and "justice" factors enumerated above strongly favor venue elsewhere. Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985); *see* Lewis v. ACB Business Services, Inc., 135 F.3d 389, 413 (6th Cir. 1998); Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. In re Volkswagen of Am., Inc., 545 F.3d at 315.

### III.   Venue Is Proper In California Because A Substantial Part Of The Events Occurred In California.

The general federal venue statute is 28 USC § 1391. Section 1391(a) governs venue in diversity cases. Where federal subject matter jurisdiction is based solely on diversity of citizenship, venue is proper in a district in which a "substantial part of the events or omissions" on which the claim is based occurred, or where is located a "substantial part of the property" that

is the subject of the action. 28 U.S.C.A. § 1391(a)(2) (West).

In actions against a corporation (at least when it is the only defendant), venue is satisfied by proof that the corporate defendant is subject to personal jurisdiction in the district. In re Volkswagen of America, Inc., 545 F.3d 304 at 312–313. For venue purposes, a corporation "resides" in all districts in which it is subject to personal jurisdiction; e.g., in every state in which it has "minimum contacts." *See* International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Sections 1391(a)(2) and (b)(2) do not require that a majority of the "events or omissions" occur in the district where suit is filed; nor that the events there predominate. It is sufficient that a "substantial part" occur there. Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003); Gulf. Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir.2005). Courts do not ask which district among two ... potential forums is the 'best' venue." Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir. 2003); ["The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too. Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial."] First of Mich. Corp. v. Bramlet, 141 F.3d 260, 263 (6th Cir. 1998).

The following factors are relevant in determining where a "substantial part" of the events or omissions occurred:

- In tort actions, where the parties acted or where the injuries occurred;

- In contract actions, where the negotiations took place, where the contract was signed, where performance or breach occurred;

- The place where parties acted or were engaged in business.

*See* Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2nd Cir. 1992); Myers v. Bennett Law Offices, 238 F.3d 1068, 1076 (9th Cir.2001); Jenkins Brick Co. v. Bremer, 321 F.3d at 1371.

Congress' reference to "events or omissions giving rise to the claim" requires courts to focus on relevant activities of the defendant, not the plaintiff. Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995). For example, Pennsylvania collection agency mailed demand for payment to debtor who resided in New York but who had incurred the debt while living in Pennsylvania.

Debtor sued for unfair collection practices (under 15 U.S.C.A. § 1692 (West)). Venue was proper in New York because "a substantial part of the events giving rise to the claim" (i.e., where dunning letter received) occurred in New York. Bates, 980 F.2d at 868.

Similarly, a Utah Defendant allegedly violated the Fair Credit Reporting Act in obtaining credit reports on Nevada Plaintiffs. Venue was proper in Nevada because that is where the invasion of their privacy occurred, which was a "substantial part of the events" giving rise to the claim. Myers, 238 F.3d at 1076.

Likewise, Plaintiff, a Georgia corporation, sued Defendant, a Texas resident; seeking a declaratory judgment that Defendant's former employment was "at-will." Venue was proper in Georgia because a substantial part of the events or omissions giving rise to the claim occurred in Georgia. Defendant traveled frequently to Georgia as part of his employment, was in daily contact with the Georgia office (as a "telecommuter") and listed the company's Atlanta office as his business address. Carekeeper Software Develop. Co., Inc., 46 F. Supp. 2d 1366, 1371–1372 (N.D. Ga. 1999).

## IV.   Defendant Reasonably Should Have Anticipated Being Sued In California Based Upon It Doing Business In This State.

It was originally thought that a corporation doing business in the state had impliedly consented to be sued. Later it was suggested that the corporation could be considered present in the state. Both the implied consent and corporate presence fictions have today been rejected in favor of the realistic view that doing business within the state creates a relationship that makes it reasonable for the state to require that the corporation defend actions brought against it there. International Shoe Co., 326 U.S. 310 (1945); Travelers Health Assn. v. Virginia, 339 U.S. 643 (1950); Rest. 2d, Conflict of Laws § 47; *see* 21 Hastings L. J. 1127; 28 U.C. Davis L. Rev. 513 [symposium on history of personal jurisdiction following *International Shoe*]; McDougal, American Conflicts Law 5th, § 27; Scoles & Hay 3d, § 5.11; 27 A.L.R. 3d 397 [personal jurisdiction on basis of doing act or transacting business]; 36 Am. Jur. 2d (2001 ed.), Foreign Corporations § 442.

"The inquiry as to whether a corporation is 'doing business' has three significant aspects.

It may determine (1) the power of the state to impose local taxation, (2) whether the corporation falls within the state's regulatory power, or (3) whether jurisdiction exists for service of process. … The degree of activity or contact, which is required, varies according to the purpose for which the foreign corporation is sought to be subjected to local laws. … Thus, a state may have jurisdiction over a foreign corporation by virtue of its local activities for purposes of service of process, whilst lacking the power to tax or regulate the same corporation." Jeter v. Austin Trailer Equipment Co., 122 Cal. App. 2d 376, 381 (1953).

The modern approach was defined and expanded in Buckeye Boiler Co. v. Superior Court, 71 Cal.2d 893 (1969). Buckeye, an Ohio corporation, manufactured pressure vessels, selling them through independent manufacturers' representatives in a number of states. Plaintiff was injured in the course of his employment in California by the explosion of a pressure tank, identified by its label as a Buckeye product. He sued Buckeye on theories of negligence, breach of warranty, and strict products liability. Service was constructive, and Buckeye moved to quash. None of the typical acts amounting to doing business here was shown: Buckeye did not advertise its products; it had no office, representative, merchandise, property, or bank account in California; and it did not sell directly to anyone in California. The only contact was the sale of its pressure tanks to C Co., another Ohio corporation, which maintained a plant in California for the manufacture of hydraulic lifts using these tanks. Some tanks were ordered by C Co. from its California plant, and all were shipped by Buckeye to the plant. Buckeye's gross yearly sales to C Co. amounted to between $25,000 and $30,000. *Held,* this showing was sufficient to permit California to take jurisdiction.

To justify the court's assumption of jurisdiction, the defendant's activity must consist of some act or transaction in the forum state "by which the defendant *purposefully avails itself* of the privilege of *conducting activities* within the forum State, thus invoking the benefits and protections of its laws." Buckeye Boiler Co., 71 Cal.2d at 898, quoting Hanson v. Denckla, 357 U.S. 235 (1958). Once the requisite activity is shown, the propriety of an assumption of jurisdiction depends upon "a balancing of the inconvenience to the defendant in having to defend itself in the forum state against both the interest of the plaintiff in suing locally and the

interrelated interest of the state in assuming jurisdiction." Buckeye Boiler Co., 71 Cal.2d at 899. The forum state has an interest in opening its courts to residents seeking redress, and in assuming jurisdiction where the evidence is within its borders and the local law governs. Id. The nonresident defendant, who derives economic benefit from activities in the forum state, ordinarily has very little ground for complaining of inconvenience in being required to defend it there. Id. at 900.

## A.    What Constitutes Doing Business.

For many years it was held that the corporation must do some substantial part of its ordinary business within the state; a single, isolated act, not intended as the commencement of a series of acts, was an insufficient basis for jurisdiction. See West Publishing Co. v. Superior Court, 20 Cal.2d 720, 728 (1942); Proctor & Schwartz v. Superior Court, 99 Cal. App. 2d 376, 383 (1950) [interstate sale of machinery by Pennsylvania seller to California buyer; alleged business consisted solely of sending employee to assist in installation].

But, today, the approach is quite different. "Doing business is doing a series of similar acts for the purpose of thereby realizing pecuniary profit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts." Rest. 2d, Conflict of Laws § 47, Comment a. California "stands with the vanguard of jurisdictions committed to a liberal approach to this issue." Jeter v. Austin Trailer Equipment Co., 122 Cal. App. 2d 376, 386 (1953); See Empire Steel Corp. of Texas v. Superior Court, 56 Cal.2d 823 (1961); Buckeye Boiler Co. v. Superior Court, 71 Cal.2d 893 (1969); Kneeland v. Ethicon Suture Laboratories, 118 Cal. App. 2d 211, 257 (1953); Rowe v. Dorrough, 150 Cal. App. 3d 901, 907, 908 (1984) [Yamaha Japan, with no direct contacts in California, marketed motorcycles in California through instrumentality of Yamaha USA, a California corporation; jurisdiction over Yamaha Japan upheld];

The fact that a business is wholly interstate or foreign commerce is not an objection to jurisdiction. International Shoe Co. v. Washington, Office of Unemp. Compensation & Placement, 326 U.S. 310 (1945); West Publishing Co., 20 Cal.2d at 729; Carl F. W. Borgward, G.M.B.H. v. Superior Court, 51 Cal.2d 72, 76 (1958); Koninklijke Luchtvaart Maatschappij v.

1  Superior Court, 107 Cal. App. 2d 495, 500 (1951); Rest. 2d, Conflict of Laws § 47, Comment h;

2  36 Am.Jur.2d (2001 ed.), Foreign Corporations § 334. The fact, that the activity, giving rise to

3  the cause of action, is not part of the usual business of the corporation is likewise not controlling.

4       In Long v. Mischicot Modern Dairy, 252 Cal. App. 2d 425 (1967), defendant, a

5  Wisconsin corporation manufacturing and selling cheese in Wisconsin, did not do business in

6  California, and had no representative here. But it owned a parcel of California land, which it

7  listed for sale with California realtors and later agreed to sell to plaintiff California resident; it

8  also brought a quiet title action to clear the title and petitioned for rezoning. Plaintiff, alleging

9  breach of the agreement, sued in California. *Held,* order quashing summons reversed. Id. at 432;

10  2 Witkin, Cal. Proc. 5th (2008) Jurisd, § 167, p. 770. The question is not whether a company

11  anticipated being sued in California, "but what it *reasonably should have* anticipated." A.I.U.

12  Ins. Co. v. Superior Court, 177 Cal. App. 3d 281, 291 (Cal. Ct. App. 1986). 2 Witkin, Cal. Proc.

13  5th (2008) Jurisd, § 168, p. 771.

14  **B.    Defendant Has Enough Minimum Contacts With California That It Should Have**

15  **Reasonably Anticipated Being Hailed Into Court Here.**

16       In determining whether a nonresident defendant has "minimum contacts" with a forum

17  state sufficient to support the exercise of jurisdiction over the nonresident it is immaterial that

18  defendant did not anticipate being sued in the forum state; the question is not what the defendant

19  did anticipate, but what it reasonably should have anticipated, that is, was defendant's conduct

20  and connection with the forum state such that he should have reasonably anticipated being haled

21  into court there. A.I.U. Ins. Co., 177 Cal. App. 3d at 291.

22       On February 14, 2000, employees of the Ranch, under direct orders from Defendant,

23  kidnapped Plaintiff from his Grandmother's home in Agoura, California. Employees handcuffed

24  him, and beat him into submission in California. Against his will, Plaintiff was transported from

25  California across state lines. Employees threatened Plaintiff's life in California if he attempted to

26  tell anyone. He was held against his will for over two years in violation of Cal. Penal Code § 236

27  (West), and subjected to sadistic beatings and sexual abuse daily by guards and staff members of

28

the Ranch. Plaintiff was emotionally terrorized by employees of the Ranch for over two years and taunted he would never leave there alive. Complaint ¶¶ 8-10.

In return for its sadistic and criminal beatings and sexual assaults of Plaintiff, the Defendant received over $3,600 per year for kidnapping him from California, and holding him against his will at the Ranch. Defendant would like this Court to believe that it has no ties to California and should not be hailed into this Court. But, the Defendant has purposefully availed itself from this Court's jurisdiction. The Defendant committed egregious acts of violence against Plaintiff, a California resident, in both California and Utah. Complaint ¶¶ 8-10.

The Defendant transacted business and continues to transact business in the State of California for the purpose of realizing a pecuniary profit. It engages in economic activity with California by advertising here, and takes money from California residents for its facility in Utah. The Defendant even does business with the State of California – specifically the Los Angeles County's Department of Children and Family Services – who pay $6,371 per month for children (wards of the state) attending the Ranch. Defendant is clearly "doing business" in California, thus, creating a relationship that makes it reasonable for California to require that it defend actions brought against it here.

## V.    This Court Must Apply The Substantive Law Of California.

In diversity cases, the federal court normally applies the substantive law of the forum state, including its choice of law rules (Erie doctrine). Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). Merely because the court has been changed for "convenience" purposes should not change the substantive law governing the action: "A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." Van Dusen v. Barrack, 376 U.S. at 639. The transferee court in a diversity case must apply the law of the state in which the action was originally filed: i.e., the same statutes of limitation, rules concerning capacity to sue and other "substantive" rules the transferor court would have applied. Id. at 637–639 (1964); Muldoon v. Tropitone Furn. Co., 1 F.3d 964, 965 (9th Cir. 1993).

California, as the forum state, has an interest in having its law applied to this case. *See*

Hill v. Hill, 193 Cal. App. 3d 1118, 1121 (1987). "Generally, the preference is to apply California law, rather than choose the foreign law as a rule of decision." Strassberg v. New England Mut. Life Ins. Co., 575 F.2d 1262, 1264 (9th Cir. 1978). Here, California presumably has an interest in the enforcement of its statute of limitations relating to child sexual abuse involving one of its domiciliaries. The Defendant argues the only connection this case has to California is that Plaintiff is a California resident. But, quite the opposite is true.

A substantial part of the events or omissions giving rise to the claims in this complaint occurred in California. Plaintiff was a California resident when he was abducted from California; taken against his will across state lines; brutally beaten and sexually abused; and held at the Ranch against his will for over two years until his 18th birthday. The origin of Plaintiff's abuse began on February 14, 2000 under the cover of darkness. Employees of the Ranch, operating under direct orders from Defendant, kidnapped Plaintiff from his grandmother's home in California, and committed egregious acts of violence in this State upon a resident of this State. Employees handcuffed Plaintiff and beat him into submission and threatened him with his life when he refused to go. California is the origin of Defendant's crimes of physical and sexual abuse perpetrated against Plaintiff.

California has gone to great lengths to protect its citizens from child sexual abuse. As set forth, the Legislature in Cal. Civ. Proc. Code § 340.1, furthered its policy of protecting children by providing an extended statute of limitations for civil actions resulting from childhood sexual abuse.

> Section 340.1 sets forth special rules for establishing the limitations period for damages caused by childhood sexual abuse. The Legislature specifically noted that "This bill would extend the statute of limitations to eight years from the plaintiff's majority for the commencement of such suits [for recovery of damages resulting from childhood sexual abuse]," and that the amendment extends the statute of limitation for actions based on injuries resulting from 'childhood sexual abuse'. . ." See Request for Judicial Notice, Exhibit 6, Sen. Comm. Jud. Analysis of SB 108 (1990) at 1(3/28/89); Request for Judicial Notice, Exhibit 7, Sen. Third Reading Analysis of SB 108 at 1 (1990) (4/30/1990). "As passed by the Assembly, this bill: . . . Expanded the statute of limitations provision for recovery of damages for childhood sexual abuse to apply to any such civil action brought against any person or entity under any theory of liability." See Request for Judicial Notice, Exhibit 14, Assem. Concurrence in Sen. Amendments to AB 1651 (1998), at 2 (emphasis added).

The Legislature's directive that the 1990 amendment applied to "any civil action" is a clear indication that the amendment was enacted to extend the statute of limitations applicable to all civil actions resulting from childhood sexual abuse. An injured victim of childhood sexual abuse is equally entitled to the extended statute of limitations whether the plaintiff is asserting a cause of action for negligence, battery, fraud or any other cause of action, so long as the underlying damages sought were caused by childhood sexual abuse.

Utah, on the other hand, wants to limit the statute of limitations for sexual abuse on its residents. But, as stated, Plaintiff is not a Utah resident. He is a California resident and was at the time of his abduction and sexual abuse. He was held against his will and made to endure repeated sadistic physical and sexual beatings, humiliation and abuse for two long years. Plaintiff is the child the Legislature sought to protect. The Legislature, over a course of years, has made it abundantly clear that its intent was to ensure that adults who suffered during their childhood from the acts of sexual predators are afforded a sufficient opportunity to pursue their claims. Therefore, California is the only state that has a legitimate interest in the application of its law.

The present case is analogous to California Supreme Court cases. The California Supreme Court has applied the governmental interest analysis in several cases involving questions of tort and contract law. The Court has consistently held that California law would be applied when California's interest in protecting individuals in California would be more significantly impaired than would the foreign state's interest. *See* Travelers Ins. Co. v. Workmen's Comp.App. Bd., 68 Cal. App. 2d 7 (1967); Kearney v. Salomon Smith Barney, Inc., 39 Cal. App. 4th 95, 107-108 (2006). California's interest in protecting individuals in California from childhood sexual abuse would be more significantly impaired than would Utah's interest in protecting the right of a business to physically and sexually abuse children for legitimate business reasons and financial gains. The court should therefore hold that venue is proper in California.

### Conclusion

Plaintiff respectfully requests the Court deny the Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), and hold that California is the proper venue to bring this suit.

Dated: April 4, 2011                      /s/Michele M. Betti                    .
                                          Michele M. Betti, Esq.
                                          Law Offices Of Betti & Associates
                                          Attorneys for Plaintiff
                                          Eric Norwood

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned whose address appears below, certify:  that I am, and at all times

hereinafter mentioned was, more than 18 years of age; that on April 4, 2011, I served a true copy

of the within **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO**

**TRANSFER PURSUANT TO § 1404(a)**, by electronic service via U.S. District Court on the

following persons below and by U.S. Mail on the following persons below:


Vince M. Verde, Esq.
Carolyn Sieve, Esq.
Daniel A. Adlong, Esq.
OGLETREE, DEAKINS, NASH, SMOAK &STEWART, P.C.
695 Town Center Drive, Suite 1500
Costa Mesa, CA 92626

Attorneys for Defendant
Children And Youth Services Inc.,
West Ridge Academy/Utah Boys Ranch


I certify under penalty of perjury that the foregoing is true and correct.  Executed on
April 4, 2011.


/s/ Michele M. Betti                        .
Law Office Of Betti & Associates
1732 Knoll Field Way
Encinitas, CA 92024